```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

PRINCE BROWN, ARTHUR DOWLING, DAVID
PETERSON, HASSAAN KAMKISSON and
ARMANDO SWABY,

                    Plaintiffs,         REPORT AND
                                        RECOMMENDATION
         - against -
                                        CV 2009-1809 (RJD)(MDG)
THE CITY OF NEW YORK, et al.,

                    Defendants.
- - - - - - - - - - - - - - - - - -X
```

GO, United States Magistrate Judge:

The five plaintiffs in this action brought under 28 U.S.C. § 1983 claim that the City of New York and various named and unnamed officers violated their civil rights in connection with several car stops by police because the vehicle was allegedly wrongly reported as stolen. Compl. (ct. doc. 1) ¶¶ 10-12. Three months after the parties settled the action, plaintiffs filed a motion for entry of judgment and an award of interest (ct. doc. 33) because of the defendants' delay in payment. The Honorable Raymond J. Dearie has referred the motion to me for report and recommendation.

## BACKGROUND

The parties filed a Stipulation of Settlement and Discontinuance on June 25, 2010 (ct. doc. 31), which was "so ordered" by the Court and entered on the Court docket on June 28, 2010. See ct. doc. 32. The stipulation resolved the claims

asserted by all five plaintiffs for a total of $54,500.[1]  Id.

By letter filed on September 16, 2010, counsel for plaintiffs, David A. Zelman, Esq. complained that his clients had not been paid and enclosed a proposed Judgment providing for payment, plus interest from June 15, 2010.  See ct. doc. 33.  In response, Assistant Corporation Counsel Raju Sundaran stated in his letter dated October 4, 2010 that settlement payments for plaintiffs Hassaan Ramkissoon and Arthur Dowling were mailed to their counsel on or about September 23, 2010.  See ct. doc. 36.  A settlement payment for plaintiff Armando Swaby was "released or about September 27, 2010 and sent to counsel."  Id.  Similarly, settlement funds for plaintiff David Peterson were "released on September 29, 2010 and subsequently sent to counsel."  Id.  Mr. Sundaran also stated that the payment to plaintiff Prince Brown could not be released until Mr. Brown submitted a request for a final lien letter from the Human Resources Administration ("HRA"), which had advised Mr. Brown in a letter dated September 13, 2010 that he had an outstanding child support lien.  See id. Plaintiffs' counsel responded on the same day that his office had received payments only for plaintiffs Ramkissoon and Dowling.  Ct. doc. 37.  Mr. Zelman also attached an affidavit signed by Mr. Brown previously sent to defendants on June 15, 2010, in which Mr. Brown stated, inter alia, that he was "not in arrears in child support

---

[1] The sum was to be distributed as follows: Prince Brown to receive $22,500.00, Arthur Dowling to receive $8,500.00, David Peterson to receive $3,000.00, Hassaan Ramkissoon to receive $12,000.00, and Armando Swaby to receive $8,500.00.  Id.

payments."  See id.

At a conference on October 22, 2010, Mr. Sundaran reported that four of five plaintiffs had been paid and that although HRA had agreed to waive a lien against Mr. Brown, payment had been withheld because of unpaid child support.  See also Minute Entry dated Oct. 22, 2010.  Counsel subsequently confirmed that Mr. Brown received a settlement check on November 10, 2010 of $21,185, representing the settlement payment of $22,500, less a deduction of $1,315 for unpaid child support.  See ct. docs. 40, 41. After further discussion between the parties and the Court, Mr. Zelman stated at a conference on November 29, 2010 that Mr. Brown did not contest the withholding of payment for the child support obligation.  See Minute Entry dated Nov. 29, 2011.  However, counsel still sought to collect interest on the settlement.

## DISCUSSION

Plaintiffs argue that New York law requires that defendants pay interest because of their delay in making timely payment due under the settlement.  Although counsel does not explicitly state the legal basis for this request, he apparently is relying on C.P.L.R. section 5003-a(b), which provides that a municipality settling an action for damages must pay all sums due within ninety days after the settling plaintiff tenders a duly executed release and a stipulation discontinuing the action.  See N.Y. C.P.L.R. § 5003-a(b); ct. doc. 33, 37, 39.  Defendants argue that this state-law provision does not apply in a § 1983 action, that no provision

in the settlement agreement provides for interest if payments are not made by a certain deadline, that plaintiffs failed to tender a stipulation of settlement as required by the statute and that Mr. Brown's release was defective because he failed to disclose his child-support lien.

The Second Circuit has not yet ruled on the applicability of § 5003-a to settlements of federal claims.  The few district courts that have addressed the issues have reached inconsistent results and provided little reasoning to explain their results.  Compare Nicaj v. City of New York, 2009 WL 513941 (S.D.N.Y. Feb. 26, 2009) (declining to apply § 5003-a) and Green v. City of New York, 2000 U.S. Dist. LEXIS 11691 (S.D.N.Y. Aug. 16, 2000), adopted 97 Civ. 8191, ct. doc. 48 (same) with Dixon v. City of New York, 2002 WL 31466762 (S.D.N.Y. Nov. 1, 2002) (granting interest pursuant to § 5003-a).

Similarly, the Second Circuit has not definitively ruled on whether, and to what extent, state-law principles apply to a federal court's interpretation of settlement agreements resolving federal claims.  See Powell v. Omnicom, 497 F.3d 124, 129 n. 1 (2d Cir. 2007) ("It is unclear whether the settlement of federal claims is governed by New York law or federal common law").  Because much of the caselaw on this issue relates to enforcement of settlement agreements, the courts have "declined to decide this question because New York law and federal common law [are] materially indistinguishable."  Id.; see also Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997).

However, a number of district court cases examining this question have concluded that disputes over federal settlements, even those that resolve federal claims, are "quintessentially... of contractual interpretation and performance and wholly governed by state law." Bryant v. Emigrant Mortg. Co., Inc., 2011 WL 3876978, *6 (E.D.N.Y. Aug. 31, 2011) (applying New York Law to a dispute about a settlement of a Truth In Lending Act lawsuit); see also Ramnarain v. City of New York, 474 F.Supp.2d 443, 445, 447 (E.D.N.Y. 2007). Even the court in Nicaj, which declined to apply § 5003-a, recognized that "general principles of contract law govern... interpretation" of a settlement agreement, 2009 WL 513941 at *1. Other courts in the Second Circuit have acknowledged that the essentially contractual nature of a settlement requires that "courts look to the forum state's substantive law of contract." Kowal v. Andy Const. Inc., 2008 WL 4426996, *2 (E.D.N.Y. Sept. 25, 2008) (applying New York law to calculate damages due to a failure to make timely payments of settlement of Fair Labor Standards Act claim); see also Frenkel v. New York City Off-Track Betting Corp., 611 F. Supp. 2d 391, 396-97 (S.D.N.Y. 2009) (characterizing plaintiff's claim for breach of a federal settlement as "alleg[ing] a state law breach of contract claim"); Arthur the Dog v. U.S. Merch. Inc., 2007 WL 2493427, *3 (E.D.N.Y. 2007). In short, although the Second Circuit has not spoken directly to this issue, "[i]n practice... the circuit court and various district courts regularly apply New York law in analyzing whether a settlement agreement should be enforced, even in federal-question cases."

-5-

Silas v. City of New York, 536 F.Supp.2d 353, 357 (S.D.N.Y. 2008) (citing cases); see also Lindner v. Am. Exp. Corp., 2007 WL 1623119, *3 (S.D.N.Y. June 5, 2007).

This line of reasoning comports with the holding of the Supreme Court's decision in Kokkenen v. Guardian Life Ins. Co., 511 U.S. 375 (1994). The question in Kokkenen was whether a federal court had subject-matter jurisdiction over an action to enforce a settlement agreement that was previously so-ordered by that court. Id., 511 U.S. at 376-77. The Supreme Court held that such an action is simply "a claim for breach of contract, part of the consideration for which was dismissal of an earlier federal suit," the effect of which is that "enforcement of the settlement agreement is for state courts unless there is some independent basis for federal jurisdiction." Id., 511 U.S. 381-82; accord Peacock v. Thomas, 516 U.S. 349, 358 (finding lack of subject-matter jurisdiction action to enforce an obligation under an Employee Retirement Income Security Act (ERISA) judgment because "the alleged wrongdoing in this case took place after the ERISA judgment was entered... Other than the existence of the ERISA judgment itself, this suit has little connection to the ERISA case").

It logically follows that, irrespective of whether a federal court retains jurisdiction over a settlement agreement, as here,[2]

---

[2] In this case, there is no issue of subject-matter jurisdiction. In Kokkonen, the Supreme Court emphasized the distinction between a new action to enforce a settlement agreement and "merely reopening... the dismissed suit." Id. at
(continued...)

the law that governs interpretation of the agreement remains the law which would be followed by the appropriate state court in deciding a contract dispute.  See LaBarbera v. Dasgowd, Inc., 2007 WL 1531895, *2 (E.D.N.Y. May 22, 2007).  In Dasgowd, the Court denied a motion to enforce a personal guarantee against a defendant defaulting on an ERISA settlement agreement on the ground that it lacked subject-matter jurisdiction.  The Court noted that "[a]ctions to enforce settlement agreements are, in essence, contract actions which are governed by state law."  Id.  In that instance, because the federal court failed to retain jurisdiction when it dismissed the case, it could not find an independent basis for federal jurisdiction of the motion relating to the settlement even though the underlying case was brought pursuant to federal law.  Id.  In other words, it found no federal statute or federal common law interest raised by enforcement of the ERISA settlement. Although this Court has retained subject-matter jurisdiction over this action, this motion should nevertheless be governed by state law because it raises nothing more than a question of contract interpretation.

Moreover, the Second Circuit has suggested that even if federal common law applied to a case, New York law would ultimately govern questions regarding a settlement because "federal common law... generally adopts the relevant state law rule unless there is

---

[2](...continued)
378.  Because the terms of settlement are contained in the stipulation of dismissal "so-ordered" by this Court (ct. doc. 32), this Court has effectively retained jurisdiction over the settlement.  Id. at 381.

a significant conflict between the state rule and a federal interest." Palmieri v. Allstate Ins. Co., 445 F.3d 179, 188-89 (2d Cir. 2006).  In Palmieri, the Second Circuit applied New York contract law in interpreting an insurance contract expressly governed by federal common law where there was no equivalent federal rule, reasoning that plaintiff "pointed to no federal interest that would require us to displace New York's rule." Id.; see also Coalition on West Valley Nuclear Wastes v. Bodman, 625 F. Supp. 2d 109, 120 (W.D.N.Y. 2007) (interpretation of a contract entered into by the federal government and pursuant to a federal statute is "governed exclusively by federal law... which ordinarily adopts the relevant state law rule 'unless there is a significant conflict between the state rule and a federal interest'") (citing Palmieri, 445 F.3d at 189).  Defendants point to no federal interest that is stifled by application of § 5003-a.  Therefore, whether state law applies due to the contractual nature of a settlement agreement or whether it is adopted by federal common law, it is clear that New York law governs plaintiffs' motion.

Having decided what law to apply, this Court must analyze whether plaintiffs are entitled under state law to the relief they seek.  It is well settled that the prompt payment provision of § 5003-a is a default rule and parties "are free to craft the terms of their agreements... in any manner that is mutually acceptable to them, including exempting from or limiting the applicability of the provisions of CPLR 5003-a." Cunha v. Shapiro, 42 A.D.3d 95, 104,

837 N.Y.S.2d 160, 166 (2d Dept. 2007); see also N.Y. C.P.L.R. § 5003-a, 2007 Supp. Prac. Commentaries (parties "can provide, for example, that CPLR 5003-a shall be not be applicable"). In the absence of such express waiver, § 5003-a is automatically triggered when a plaintiff "satisfie[s] his obligation pursuant to CPLR 5003-a by tendering a general release and stipulation of discontinuance to defendant's attorney." Tencza v. St. Elizabeth Med. Ctr., 87 A.D.3d 1376, 1375, 930 N.Y.S.2d 520, 520 (4th Dept. 2011); see also Cunha, 42 A.D.3d at 103, 837 N.Y.S.2d at 166 ("settlement of the parties' action... automatically invokes all relevant provisions of the CPLR, including CPLR 5003-a").

Defendants argue, and this Court agrees in part, that not all plaintiffs have fulfilled their obligations under § 5003-a. New York courts have withheld interest otherwise due on late settlement payments where a plaintiff "never tendered to [defendant] a duly executed release." Ribacoff v. Chubb Group of Ins. Cos., 2 A.D.3d 153, 155, 770 N.Y.S.2d 1, 3 (2d Dept. 2003); see also Cunha, 42 A.D.3d at 104, 837 N.Y.S.3d at 167 (denying interest where plaintiff "failed to abide by the requirements of CPLR 5003-a," which requires a settling plaintiff "to tender a general release"). A plaintiff's tendered documents are deemed "defective [when] they did not provide for release of the plaintiff's Medicare lien." Liss v. Brigham Park Coop. Apts. Sec. No. 3, 264 A.D.2d 717, 718, 694 N.Y.S.2d 742, 742-43 (2d Dept. 1999); see also White v. New York City Hous. Auth., 16 Misc.3d 598, 600, 842 N.Y.S.2d 685, 687 (N.Y. Sup. 2007) (plaintiff "must provide for release of [any] lien

or the release is defective").

Defendants are therefore correct that Mr. Brown is not entitled to interest on his portion of the settlement payment due to the inaccuracy of his release papers and supporting affidavit, which asserted that he did not have an outstanding child support lien.  See ct. doc. 38, 39.  Defendants withheld the amount of Mr. Brown's lien from his settlement proceeds, an action that Mr. Brown does not contest at this time.  See ct. doc. 40, Minute Entry dated Nov. 29, 2010.  This Court therefore finds that since Mr. Brown failed to disclose a valid outstanding lien, the release he tendered was defective, and he did not satisfy the requirements for recovery under § 5003-a.

Defendants are mistaken, however, that the plaintiffs' failure to provide a "so-ordered stipulation of settlement" defeats their claim for interest.  While some New York courts have used the terms "stipulation of discontinuance" and "stipulation of settlement" without distinguishing between them, it is clear that plaintiff must provide a signed stipulation that need not be so-ordered unless the agreement is of a particular type, such as an infant or class action settlement, that requires judicial approval.  See, e.g., N.Y. C.P.L.R. § 5003-a (requiring plaintiff to tender a "duly executed release and a stipulation discontinuing action executed on behalf of the settling plaintiff"); N.Y. C.P.L.R. § 5003-a, 2010 Prac. Commentaries (distinguishing between a stipulation of settlement required in the ordinary course and an order approving the settlement for those agreements that require judicial

-10-

approval); Tencza, 87 A.D.3d at 1376, 930 N.Y.S.2d at 520 (using the phrase "stipulation of discontinuance" and "stipulation of settlement" interchangeably).  Although it is not entirely clear when plaintiffs' counsel actually tendered the stipulation of discontinuance, defendants cannot seriously dispute that Mr. Zelman did tender the required document.

Finally, this Court must address the issue of when plaintiffs should be deemed to have tendered the documents and when they should be deemed to have received payment.  New York courts have established that "[w]here... the release and stipulation of discontinuance are tendered by mail, the... period is measured from receipt of the documents."  Klee v. America's Best Bottling Co., Inc., 76 A.D.3d 544, 545, 907 N.Y.S.2d 260, 262 (2d Dept. 2010); see also Cunha, 42 A.D.3d at 101 n. 3, 837 N.Y.S.2d at 165; Leipold v. Arnot Ogden Med. Ctr., 46 A.D.3d 1299, 1300, 849 N.Y.S.2d 313, 314 (3d Dept. 2007).  The statute specifies that interest is to be calculated "from the date that the release and stipulation... were tendered."  N.Y. C.P.L.R. § 5003-a(e).  New York courts have also held that payment occurs upon mailing, not receipt, of the settlement proceeds.  See Yorks v. Pecora, 17 Misc.3d 1102(A), *1, 851 N.Y.S.2d 61 (Table) (N.Y. Sup. 2007); Rodgers v. State of New York, 14 Misc.3d 1215(A), *2, 836 N.Y.S.2d 489 (Table) (N.Y. Ct. Cl. 2006) (noting that state legislature's concern in enacting § 5003-a was "the failure of the defendants to act promptly and not that funds be available to claimants") (internal citations omitted); O'Reilly v. State of New York, 164 Misc.2d 477, 479-80,

-11-

625 N.Y.S.2d 801, 802-03 (N.Y. Ct. Cl. 1995) ("I also note that the contrary interpretation would in effect rule out the use of mail, other than express, overnight mail, for the delivery of settlement checks because no defendant, or attorney could be guaranteed of the date of mail delivery").

Accordingly, this Court finds that interest should be awarded for the late settlement payments beginning from the date that defendants received the releases and signed settlement agreement. Calculating the amount of interest is not a straightforward matter on this record. Plaintiffs' counsel states that he "supplied releases and a stipulation of discontinuance to the defendants on June 15, 2010." Ct. doc. 33. However, he does not state whether he mailed or hand delivered those documents to Assistant Corporation Counsel Brian Maxey, then counsel of record for defendants. In his cover letter dated June 15, 2010 to Mr. Maxey, Mr. Zelman does not specify the method of delivery from counsel's office on Eastern Parkway, Brooklyn to the Corporation Counsel's office in Manhattan. Ct. doc. 37 at 3.

This Court notes that counsel for the parties appeared for a settlement conference on June 15, 2010 at 10:00 a.m. The conference ended when discussions reached an impasse. See Minute Entry dated June 15, 2010. However, Mr. Maxey filed a letter at 4:57 p.m. advising that the parties had reached an agreement to settle. See ct. doc. 29. Mr. Maxey also stated that he would be filing "a stipulation and order of discontinuance and settlement shortly." Id. Although the filed stipulation of settlement and

-12-

dismissal bears a handwritten "15" in its June 15, 2010 date (ct. doc. 31), there is no evidence that plaintiffs delivered the signed stipulation to Mr. Maxey on that date.  Nor is there anything to show that the required documents had been prepared as of June 15, 2010.  Significantly, Mr. Zelman states in his June 15, 2010 cover letter that he was enclosing releases and affidavits; nowhere does he mention that he was also forwarding a signed stipulation of discontinuance or settlement.  See Ct. doc. 37 at 3.  Mr. Maxey filed the signed stipulation and settlement agreement on June 25, 2010, ten days later.  Ct. doc. 31.

Based on the letters of both counsel on June 15, 2010 and the absence of evidence indicating otherwise, this Court finds that plaintiffs did not deliver the stipulation of settlement to defendants on June 15, 2010.  However, given the pro forma nature of the settlement agreement, this Court finds Mr. Maxey should have prepared the stipulation within two days at the latest and sent it to Mr. Zelman by June 17, 2010.  If Mr. Zelman promptly signed the stipulation and returned it by mail, Mr. Maxey would have received the document three business days later -- that is, Tuesday, June 22, 2010.  Ninety days after June 22, 2010 is September 20, 2010.  Thus, Mr. Zelman was premature when he filed his motion on September 16, 2010 and claimed that payment had not been made within the 90 day statutory period.[3]  Nonetheless, defendants

---

[3] Mr. Zelman also states he had e-mailed defense counsel in an attempt to resolve the issue prior to filing his letter.  Ct. doc. 33.  However, this Court is aware from other cases that Mr. Maxey had left the Corporation Counsel's office around the end of
(continued...)

failed to send plaintiffs the settlement monies within 90 days after delivery of the releases and stipulation of settlement, as discussed below.  Section 5003-a imposes no requirement on a prospective recipient of a settlement other than to deliver the requisite documents.

The record is also not completely clear as to the date that payment was made.  As previously discussed, payment is deemed to be made when defendants mail the monies to plaintiffs.  Mr. Sundaran states that payments to Mr. Ramkissoon and Mr. Dowling were mailed on September 23, 2010 (ct. doc. 36).  Accordingly, I find they are deemed to have received their payments on that day.  See Yorks, 17 Misc.3d 1102(A) at *1, 851 N.Y.S.2d at 61 (Table); Rodgers, 14 Misc.3d 1215(A) at *2, 836 N.Y.S.2d at 489 (Table); O'Reilly, 164 Misc.2d at 479-80, 625 N.Y.S.2d at 802-03.  However, Mr. Sundaran only provides dates that payments were "released" to plaintiffs Armando Swaby and David Peterson and then sent to counsel.  Ct. Doc. 36.  This Court assumes, based on discussions with Law Department attorneys in other cases, that the "release" date is the date that the Controller's Office approved payment, which then enables a check to be issued and mailed.  Mr. Sundaran's letter suggests much the same in stating that funds were released "and subsequently sent to... counsel." Id.  I recommend that payments to these plaintiffs be deemed to have been made two business days

---

[3](...continued)
August 2010.  While prior notice is not a prerequisite to a claim under Section 5003-a, the common (and better) practice in this Court is for parties to attempt to resolve any dispute before seeking Court intervention.

after their "release" date.  Thus, Armando Swaby received his settlement payment on September 29, 2010 and David Peterson received his payment on October 1, 2010.  Based on the date of June 22, 2010 as the date that all requisite settlement documents were delivered by plaintiffs and the dates of receipt discussed above, I recommend that interest be awarded at the statutory rate of 9% under New York law,[4] to four of the plaintiffs as follows:

|  | Settlement payment | Period of interest | Amount of interest |
|---|---|---|---|
| Hassaan Ramkissoon | $12,000.00 | 6/22/10 - 9/23/10 | $278.14 |
| Arthur Dowling | $8,500.00 | 6/22/10 - 9/23/10 | $197.01 |
| Armando Swaby | $8,500.00 | 6/22/10 - 9/29/10 | $209.59 |
| David Peterson | $3,000.00 | 6/22/10 - 10/1/10 | $75.45 |

However, I recommend that no interest be awarded to Plaintiff Prince Brown because he not only failed to provide accurate information regarding his outstanding HRA lien, he never tendered a release of the lien.

The delay in payment also resulted in part from the refusal of Mr. Brown's attorney to obtain a final lien letter.  Although this Court pressed Mr. Sundaran to obtain the letter in the interest of finally resolving the issue of payment, that is a task that ordinarily is not performed by counsel for defendants.  The existence of the lien is a matter clearly within the knowledge of

---

[4] N.Y. C.P.L.R. § 5004; see also Brown v. State of New York, 10 Misc.3d 1071(A) at *1, *3, 814 N.Y.S.2d 560 (Table) (N.Y. Ct. Cl. 2005).

-15-

Mr. Brown. Once alerted to the fact that HRA asserted a lien, Mr. Brown and his attorney were in the best position to obtain a determination of the amount of the lien and, if necessary, to challenge the calculation. Rather than doing so, they wholly denied that HRA had a valid lien, giving further reason for denial of interest to Mr. Brown.

Finally, delay in payment is a recurring, albeit infrequent, problem. Critically, while this Court understands the reasons why municipalities are afforded by statute more time to pay settlements without incurring interest, this Court is aware of other instances of delays in payment beyond the 90 day period.[5] An award of interest in these circumstances is required by Section 5003-a.

## CONCLUSION

For the foregoing reasons, I recommend that the Court deny plaintiffs' application for an award of interest to plaintiff Prince Brown and grant the application as to the remaining four plaintiffs and award interest as follows: $278.14 for Mr. Ramkissoon, $197.01 for Mr. Dowling, $209.59 for Mr. Swaby, and $75.45 for Mr. Peterson.

This report and recommendation will be filed electronically on this date. Any objections to this Report and Recommendation must

---

[5] A partial list of such instances includes Nicaj, 2009 WL 513941; Lakin v. Cty. of Suffolk, 29 A.D. 534, 814 N.Y.S.2d 264 (2d Dept. 2006); Dixon, 2002 WL 31466762; Green, 2000 U.S. Dist. LEXIS 11691; White, 16 Misc.3d 589, 842 N.Y.S.2d 685; Woodhouse v. City of New York, 101226/1995 (N.Y. Co. Sup. Ct. June 23, 1999); Brown, 10 Misc.3d 1071(A) at *1, *3, 814 N.Y.S.2d 560 (Table).

be filed, with a courtesy copy sent to the Honorable Raymond J. Dearie and the undersigned, by February 16, 2012.  Failure to file objections within the specified time waives the right to appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

    **SO ORDERED.**

Dated:    Brooklyn, New York
           January 30, 2012

                                        /s/
                                    MARILYN D. GO
                                    UNITED STATES MAGISTRATE JUDGE